This next case is 417-0827, People v. Reed. For the appellant is Dean Burask. For the appellee is Osario Escalera. Okay, Mr. Burask, you may proceed, sir. Thank you, sir. May it please the court. Counsel. And counsel. Primarily I wish to focus, though I raised a number of issues in the brief and appeal on the mental health issue and whether that, which in our opinion established cause of prejudice in regard to my client's situation in this case. These successive post-conviction petitions are essentially efforts to dig someone out of their legal grave, and they're already in the coffin, and many of the nails have been put in. And so there's a very stringent burden in these cases. But we respectfully propose that this case should have gone on for further proceeding. My client was arrested on January 2 of 2006 for the incident regarding Mrs. Deviner. He was convicted on May 3 of 2006, and by June 21 of 2006, he was on his way to the State Bill Correctional Center having been sentenced to 57 years in the Illinois Department of Corrections. The primary allegation that we make in our brief, primary one, is that he had a mental condition or illness that was brought to the attention of counsel and was not addressed in a fitness center. And I understand the Mitchell standard, and that is a high standard. It's a difficult standard, especially given the fact that there is no evaluation by a doctor from either side, whether it's the state or the defense, that one can rely on. But there were affidavits from his mother regarding the fact that his mental condition was brought to the attention of counsel, also from his cousin to the same effect. I did attempt to get his Social Security records, but I attached in the successive post-conviction petition as an exhibit both my letter to the Social Security Administration as well as the Social Security Administration's response that those records had been destroyed. Nevertheless, my client described in his affidavit to the taking of Tegretol, which is a prescribed substance since he was a boy, to deal with depression and abnormally aggressive behavior. Now, he was not on this medication at the time that this trial took effect, but we believe that that is a primary problem, that he was not taking that medication. And he also averred that he had an eighth-grade education, that he suffered from emotional and mental health issues from the time he was a boy. And we believe that, based on all of these factors, that there should have been an inquiry into his fitness, especially given the short period of time within which, from the time that he was arrested to the time that he was convicted and sentenced on June 21 of 2006. So I open it up to the court for... Well, is there any indication that he was in the record before us, other than he had mental health problems, that he was unable to understand or appreciate the charge against him or cooperate with counsel? There is. If you look at the record, well, I mean, the whole record establishes, and you can spin it either way, Mr. Reed is a very litigious person. I mean, this case went through, as attached, you know, his previous, the initial post-conviction petition, his writings to the court. I think there was even a point at which Judge Diamond had ruled and entered an order that Mr. Reed was harassing the court with all of the matters that he was forwarding to the court. I guess my response to that is, Judge, that on the face of the record, just reading the letters in the transcripts of the trial, one may not necessarily reach that conclusion, though my client did not testify. I mean, you can't get a sense of who he is as a person, I think, unless you have testimony from the individual. But the fact that this entire record shows how he was behaving toward the court and addressing all of these issues, in my humble opinion, does indicate a degree of instability. Well, so what? I mean, the bottom line is, the standard I just gave you is, it's far different from a question of does he have any mental illness or does he have any mental problems of any kind. Right. Is he able to understand the charge against him and is he able to cooperate with counsel? Is there any suggestion in the record before us, beyond the fact, gee, maybe he's got some mental health problems, that either of those two are present? The only thing I can say to that, Your Honor, is I think it's more toward the latter in terms of cooperating with counsel. In terms of evidence, the reason we have affidavits and post-conviction petitions is because you need to establish something that's beyond the record. It's not in the record. My client signed an affidavit and a verb that he had mental health problems and that he could not understand what was going on and he could not reasonably cooperate with counsel in his defense. And so, therefore, I think that issue is open. So this was a jury trial? Yes, sir. Judge Dimond was the presiding judge? I believe so. Very experienced, sharp guy. I have no doubt of it. He detects nothing during this trial of any difficulty concerning this guy? No, he did not sui sponte order a fitness evaluation of this individual. Well, judges can do that. Scott Dimond, the former public defender of Macon County, would know that. I appreciate that. Unfortunately, I've never practiced before Judge Dimond, or had in the past. But all I can present to the court is what it is that we have, in terms of the affidavits of his mother and his cousin, as well as his own affidavit. Well, again, assuming that there were merit to all this, why was this presented the first time in the initial post-conviction petition? Well, I think it's perhaps a circular argument, Your Honor. But I think it's because not only, well, I know the counsel cited in this brief that nobody's entitled to an appointment of counsel for a first post-conviction petition. I understand that. Nevertheless, this was an extraordinarily uneducated individual. He had only made it to eighth grade. And we are averring that he did have mental health problems, which would have interfered with his ability to file a post-conviction petition that addressed this issue. I mean, the reality, Judge, is that in the Illinois Department of Corrections, whether you're at Menard or you're at Hill Correctional Center or wherever you are, the filing of these post-conviction petitions is a cottage industry. There's people who work in the law library and who are paid in one way or another by people to file these. Karate graduates from the Menard School of Law, I believe you said that. Well, that's a good way to put it, Judge. But, I mean, they are, I don't think that you can assume that the product that you're looking at is necessarily created by the individual who filed it. Because these people, I don't think that a person with barely an eighth grade education could have filed the first post-conviction petition. Now, I'm not saying that it deserved a Nobel Prize, but certainly it was at least understandable to some extent. And I believe that there is sufficient evidence in the record to establish that Mr. Who is his trial lawyer? Mr. Ruter. R-E-U-T-E-R. I don't know the gentleman. What inference can we draw from the fact that he never said anything during trial, nor is there any affidavit from him in support of your petition? I don't know that the court can necessarily draw any inference from the fact that he did not raise the issue. The record simply states or stands that he did not bring that issue to the attention of the court. There is a reference in the affidavits of Ms. Reed and the cousin, Marlon Reed, that when they attempted to bring, quote, unquote, Mr. Reed's mental health condition to the attention of Mr. Ruter, that it was not listened to at that point. So I don't believe necessarily that any inference should be drawn from that, and it would be extremely unlikely that counsel would say, well, yes, I was aware that this individual had difficulty understanding the nature of the charges or couldn't cooperate with me, so I'm going to sign an affidavit and admit that I didn't do what I was supposed to do. So I don't think any inference can be drawn from that. And that is the issue I wish to address. I'm going to rest on my brief in regard to the other issues. I see no other questions. Thank you, Mr. Rask. Thank you. Mr. Escalera. Safety, support, counsel. Good afternoon, Your Honor. I'm Rosario Escalera, and I represent the state. Your Honors, I know counsel addressed the cause and the mental health condition, but I'd like to address prejudice in this case because simply, as most cases, if the court can dispose of the argument on prejudice, it can affirm on the trial court basis regarding that issue. And before I address that, I'd like to state the forfeiture argument in our brief that the defendant has forfeited three of his arguments because his arguments violate Supreme Court Rule 341H. Now, regarding to the actual merits of the case, I'll just address the mental health condition. I'd like to first note that in the affidavits, it just states that he has a mental condition. This is the first time I've heard that he has depression and aggressive behavior. I knew about his eighth grade education, but that's why the state has cited the Smith case in our motion to cite additional authority. And in Smith, we knew the defendant in that case had an IQ of 79, which means he was mentally retarded. Now that I know this information, I don't even think, even if he did have this type of mental illness, as the defendant or as the opposing counsel recognizes, his argument is circular in that he has already filed a post-conviction petition, but then he's using his mental health condition to use that. But then, how can the defendant's mental health condition prevent him from raising issues he's already raised? It's a circular argument. But nevertheless, regarding the mental health condition, the defendant doesn't even argue in his brief the correct test in this type of case, let alone that there's even a bona fide doubt. As counsel has already stated, there was no record, or I'm going to address Justice Steinman, the record doesn't even establish or even note that the defendant would have been unable to assist in his defense. Now, the defendant barely spoke in the pretrial hearings, but he did speak in the crankle hearing, which obviously is after his trial. In those proceedings, he answered all the trial court's questions. The trial court asked him certain claims, and he responded accurately. I would believe that the record demonstrates that he was able to assist in his case because he was able to respond to the trial court's questions. What was the proceeding you're referring to? It was the crankle hearing, Your Honor. And that was the basis for his first appeal. And in that proceeding, like I said, he's been asked many questions. He answers promptly. And I believe, like as Your Honor said, Judge Steinman would have known, or sui sponte, he would have seen that the defendant, in this case, would have been unable to assist in his own defense. But I'd like to also, I'll just go ahead and stray to the cause. It was not the defendant's lack of, it was not his mental condition that prevented the defendant from raising, but it was his lack of education and his lack of counsel from raising these issues. Here, the defendant obviously knew, by the time he had this post-conviction petition, when he submitted it, he was obviously aware that he had the knowledge to put this information in his post-conviction petition. He could have just simply argued that he brought this up to his counsel, and then that would have been, then the release would have been inherent. But he hasn't even done that, Your Honors. And it sustains contention that it's the defendant's lack of education, his lack of counsel, prevented the defendant from raising these issues. And that's demonstrated by the record in multiple instances. For example, on page 209, the defendant knows that he had a limited education and was not schooled in the process of law. Page 502, he knows that he was simply unaware of, he could not understand or appreciate the relevance of these issues until he obtained counsel. And even in the defendant's own brief, he knows that he wasn't able to raise these issues because he did not have counsel. And as Your Honors are well aware, this cannot establish cause. I'd also like to note that in the defendant's original post-conviction petition, he raised similar contentions that he raises here. So in his original post-conviction petition, he argued prosecutorial misconduct, which is another instance he argues in here. So he did have the mental competence to at least acknowledge these issues. He just simply could not identify the issues. And finally, in one of his other claims, he argued that his convictions violated the double sentence enhancement. But in that case, when he was citing those multiple case law, he cited multiple cases to the one act, one crime doctrine, which is an issue he brings in this court, Your Honors. So I don't think it's the defendant's mental condition or mental health or his aggressive behavior or depression that prevented him. It was his lack of education and his lack of counsel. And because that cannot establish cause and because there's simply no prejudice, this court should affirm on that basis. If there's no questions regarding the prejudice, actually the underlying issues or any cause, I thank you for your time. I see none. Thank you, counsel. Mr. Moresk, any rebuttal, sir? No, sir, I do not. Okay. Thank you, counsel. We'll take this matter under advisement and be in recess.